MICHAEL G. COLANTUONO, State Bar No. 143551
MColantuono@CLLAW.US
SANDRA J. LEVIN, State Bar No. 130690
SLevin@CLLAW.US
AMY C. SPARROW, State Bar No. 191597
ASparrow@CLLAW.US
**COLANTUONO & LEVIN, PC**
300 S. Grand Avenue, Suite 2700
Los Angeles, California 90071-3137
Telephone: (213) 542-5700
Facsimile: (213) 542-5710

Attorneys for Defendant
CITY OF SIMI VALLEY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE #1, an individual; JANE DOE #2, an individual; JOHN DOE #3, an individual; JOHN DOE #4, an individual; JANE DOE #5, an individual; JOHN DOE #6, an individual; JANE DOE #7, an individual; JOHN DOE #8, an individual; JANE DOE #9, an individual; and JOHN DOE #10, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SIMI VALLEY and incorporated California municipality; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No: CV12-08377 PA (VBKx)<br><br>Assigned to the Hon. Percy Anderson<br><br>**OPPOSITION TO *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>Date: October 22, 2012<br>Time: 1:30 p.m.<br>Location: Courtroom 15<br>Judge: Percy Anderson |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 1

II. Plaintiffs Have Created a Procedural Quagmire.............................................. 2

III. The TRO Application Must Be Rejected Because It Is Procedurally Improper and the Court Lacks Jurisdiction ........................................................................... 4

    A. Plaintiffs' Failure to Obtain Leave to File a Complaint Under Pseudonyms Deprives the Court of Jurisdiction ......................................... 4

    B. Plaintiffs Failed to Comply with the Rules of Procedure. ' ..................... 5

IV. There Is No Urgency........................................................................................ 7

V. Plaintiffs Do Not Satisfy the Substantive Requirements for a TRO. ................ 9

    A. Plaintiffs Are Unlikely to Succeed on the Merits...................................... 9

        1. Halloween Decoration and Outdoor Lighting Are not Protected Expression. ..................................................................... 9

        2. Restrictions on Halloween Decorations Are Not Content-Based 10

        3. Halloween Activities Do Not Involve Fundamental Rights or a Protected Right of Association................................................. 11

        4. The Requirement to Post a Sign Stating "No Candy or Treats at This Residence" Should Be Upheld........................................ 12

    B. Plaintiffs Are Not Likely to Suffer Irreparable Harm in the Absence of a TRO......................................................................................................... 14

    C. The Balance of Equities Favors Enforcement of the Ordinance............. 14

    D. Enforcement of the Ordinance Is in the Public Interest. ......................... 15

VI. Conclusion ...................................................................................................... 16

Colantuono & Levin, PC
300 S. GRAND AVENUE, SUITE 2700
LOS ANGELES, CA 90071-3137

# TABLE OF AUTHORITIES

Page

CASES

*Amoco Production Co. v. Village of Gambell, Alaska,*
   480 U.S. 531 (1987) .................................................................................... 15

*Burson v. Freeman,*
   504 U.S. 191 (1992) .................................................................................... 13

*Roberts v. U.S. Jaycees,*
   468 U.S. 609 (1984) .................................................................................... 12

*Spence v. Washington,*
   418 U.S. 405 (1974) ................................................................................. 9, 10

*Stewart v. United States I.N.S,*
   . 762 F.2d 193 (2nd Cir. 1985) ...................................................................... 5

*U.S. v. O'Brien,*
   391 U.S. 367 (1968) ............................................................................... 10, 11

*W.N.J. v. Yocom,*
   257 F.3d 1171 (10th Cir. 2001) ............................................................ 2, 4, 5

*Whisenhunt v. Spradlin,*
   464 U.S. 965 (1983) .................................................................................... 11

*Winter v. Natural Resources Defense Council,*
   555 U.S. 7 (2008) .......................................................................................... 9


STATUTES

California Penal Code § 290.095 ..................................................................... 12, 13

Federal Rules of Civil Procedure, Rule 11(b)(2) .................................................... 5
Federal Rules of Civil Procedure, Rule 15(a)(2) .................................................... 2

Local Rule 7-19.1 ................................................................................................ 3, 6

## I. INTRODUCTION

Plaintiffs are playing a media game, not litigating. They found ample time for press conferences. Yet, they cannot manage to file a proper complaint or motion, have provided less than one business day's notice of this critical hearing, and failed to serve the City of Simi Valley with any of the evidence upon which their application for a temporary restraining order ("TRO") is based.

In the documents that Plaintiffs did provide, they claim urgency based upon an unsubstantiated fear of a vigilante attack. Yet, their photos, names and addresses are already publicly available on the Megan's Law website, they present no actual evidence of a threat, and the reality is that child molesters are not alone in refraining from handing out candy on Halloween or in posting "no candy" signs.

Moreover, any urgency is of Plaintiffs' own making, because they delayed for **months** after the introduction of the challenged ordinance before bringing this application. In short, there is no urgency, let alone the type of urgency that would justify less than a business day's notice to hear such an important issue.

When the time does come to consider the important constitutional issues in this case, the City will be happy to explain how and why it placed the interests of protecting children who celebrate Halloween above the interests that those who harm children may have in decorating for Halloween. The ordinance at issue here is a carefully tailored, viewpoint neutral, legislative effort to protect children. Under state and federal law, convicted child molesters are already publicly identified and restricted in where they may live and spend time. They are not free to spend time in parks, schools and other places where children congregate. This ordinance merely recognizes that on Halloween, the entire community is a place where children congregate, especially if invited in by decorations and the like.

Convicted child molesters have no constitutionally protected right to hand out candy at Halloween; children, on the other hand, do have a constitutionally protected right to be safe from sexual assault.

## II. **Plaintiffs Have Created a Procedural Quagmire**

Plaintiffs filed their original Complaint on September 28, 2012 under John Doe and Jane Doe pseudonyms, without first seeking leave of this Court to do so. As discussed below, without such leave, the court lacks jurisdiction over unnamed parties. *W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001). On October 12, 2012, after counsel for the City informed Plaintiffs of the need to obtain permission to file under pseudonyms, Plaintiffs filed a Motion for Leave to Proceed Under Pseudonyms, but the Court dismissed that motion because Plaintiffs did not notice the motion, set a hearing date or inform the City of a hearing date. Plaintiffs' counsel has admitted that this filing was improper, but attempted to excuse the oversight by stating that she is a sole practitioner and has spent "more time working with the media than working on this case." Sparrow Decla. at ¶ 3.

Plaintiffs simultaneously filed an Amended and Verified Complaint for Relief ("Amended Complaint") on October 12, 2012. However, counsel for the City explained to Plaintiffs that, like the original complaint, the amended complaint fails to allege that any of the Plaintiffs have been convicted of a sex crime against a child, as necessary to establish standing to challenge the ordinance. Sparrow Decla. at ¶ 5. Moreover, the "verification" of the Amended Complaint consisted of "John Doe" and "Jane Doe" signatures, which hardly serves the purpose of verification and amounts to a rather pointless exercise.

Next, without leave of court, Plaintiffs filed a Second Amended and Verified Complaint ("Second Amended Complaint") on October 19, 2012, dropping one of the plaintiffs who did not, in fact, have standing and apparently submitting verifications to the Court, again without copies to Defendant. Sparrow Decla. at ¶ 8. Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, leave of court is required before filing more than one amended pleading, which means that the Second Amended Complaint is currently inoperative.

Plaintiffs also filed a second Motion for Leave to Proceed Under Pseudonyms

1   on October 19, 2012, but noticed the hearing on that motion for Monday, October 22
2   — one business day after the filing. Plaintiffs did not file or serve a request to shorten
3   time on that motion. While the City has not had sufficient time to fully evaluate and
4   respond to that motion, it intends to oppose and should be given more than one
5   business day to do so. (See Opposition to Motion for Leave to Proceed under
6   Pseudonyms filed concurrently herewith.)

7         Finally, first reading (i.e., initial approval) of the contested ordinance took place
8   in August (providing ample notice of the requirements at issue), formal adoption
9   occurred on September 10, 2012 and the original complaint was filed September 28,
10  2012 (providing ample time to request a regularly noticed and fully briefed motion for
11  preliminary injunction prior to October 31). Yet, Plaintiffs nonetheless delayed filing
12  this application for a TRO until Friday, October 19, 2012, which they again noticed
13  for hearing on Monday, October 22, 2012.

14        Notwithstanding the fact that counsel for the City informed Plaintiffs in writing
15  that the City would oppose a TRO and that Plaintiffs were required to inform the
16  Court of that intention, Plaintiffs inexplicably failed to do so. Sparrow Decla. at ¶¶ 6
17  and 7. Plaintiffs instead filed their TRO application in contravention of Local Rule 7-
18  19.1, which requires an attorney filing an ex parte application "to advise the Court in
19  writing and under oath of efforts to contact other counsel and whether any other
20  counsel, after such advice, opposes the application." Further, despite extensive
21  discussions on the telephone, Plaintiffs did not provide notice to counsel of the TRO
22  hearing date or provide a copy of the application to the City's counsel, instead serving
23  documents on the City Clerk at Friday afternoon for a Monday hearing. Finally,
24  Defendant City has no idea on what evidence Plaintiffs purport to rely to support this
25  application because they did not serve copies of the supporting evidence or even
26  provide Defendant notice of what has (presumably) been filed under seal. Sparrow
27  Decla. at ¶ 9.
28

Colantuono & Levin, PC
300 S. GRAND AVENUE, SUITE 2700
LOS ANGELES, CA 90071-3137

As discussed below, these are some of the many reasons that a TRO should not issue under these circumstances.

## III. The TRO Application Must Be Rejected Because It Is Procedurally Improper and the Court Lacks Jurisdiction

Plaintiffs delayed until it was too late to seek relief through a regularly noticed and fully briefed motion for a preliminary injunction. They then failed to provide reasonable notice of a TRO hearing that they scheduled one business day after filing their application, failed to disclose to the Court that the City opposes the TRO as the rules required, and failed to disclose to the City evidence that was filed under seal without the benefit of an order authorizing them to do so. This behavior crosses the line from unreasonable to outrageous in light of the fact that this Court does not have jurisdiction over unnamed plaintiffs.

### A. Plaintiffs' Failure to Obtain Leave to File a Complaint Under Pseudonyms Deprives the Court of Jurisdiction

Plaintiffs did not seek, much less obtain, permission of this Court to proceed under pseudonyms before filing their original complaint on September 28, 2012, and explained above, their subsequent attempts to correct this mistake have been unavailing.

Leave of court is required before plaintiffs may proceed under pseudonyms, and without such permission, the court lacks jurisdiction over unnamed parties. *W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001). In that case, several unmarried residents of Utah sought to challenge the state's laws against sexual activities engaged in by unmarried adults, and plaintiffs filed under pseudonyms. The Court of Appeals dismissed the case for lack of jurisdiction, because plaintiffs had not obtained permission from the District Court for the use of pseudonyms. The court explained:

> "Proceeding under a pseudonym in federal courts is, by all accounts, 'an unusual procedure.'" *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000) (quoting *MM v. Zavaras*, 139 F.3d 798, 800 (10th Cir. 1998)).

> Rule 10(a) of the Federal Rules of Civil Procedure requires that every pleading contain a caption setting forth, inter alia, "the title of the action," and this title must include "the names of all the parties." Similarly, Rule 17(a) mandates that "every action shall be prosecuted in the name of the real party in interest."

*Ibid.* Given that this Court has not granted permission for plaintiffs to use pseudonyms, it does not yet have jurisdiction over the unnamed parties. As noted above, an injunction cannot issue in the absence of jurisdiction. *Stewart v. United States I.N.S,.* 762 F.2d 193, 199 (2nd Cir. 1985) [there is no jurisdictional basis for a district court to issue injunctive relief without the filing of a complaint].

The TRO is clearly barred for lack of jurisdiction, and Defendants informed Plaintiffs' counsel of that impediment in writing before she filed her well-publicized application for a TRO on the afternoon of Friday, October 19 and noticed this hearing for Monday, October 22.[1] Sparrow Decla. at ¶ 11. The application must be denied.

### B. Plaintiffs Failed to Comply with the Rules of Procedure.'

Plaintiffs were required to provide reasonable notice of the hearing on their application for a TRO, which they scheduled for one business day after their filing. This notice requirement is interpreted in light of the circumstances. In this case relevant facts include the time that has lapsed since the language of the ordinance was initially approved in August, the ordinance was adopted on September 10 and the original Complaint was filed September 28; the time that Plaintiffs have devoted to publicizing their grievances in both local and national media; and the magnitude of what they ask this Court to do. To be clear, the elected legislators of the City of Simi Valley, a co-equal branch of government, have duly enacted viewpoint-neutral legislation designed to protect children from knocking on the door of convicted child

---

[1] Moreover, by signing the application for a TRO, Plaintiffs' counsel has certified that her legal contentions, including the contention that Plaintiffs are entitled to a TRO, "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Federal Rules of Civil Procedure, Rule 11(b)(2). Yet, no argument is made as to how the court has jurisdiction.

molesters during the night. Plaintiffs' tactic of providing one business day's notice of a TRO hearing to overturn that legislation is unreasonable.

Secondly, as noted above, Plaintiffs' counsel defied Local Rule 7-19.1 by failing to inform this Court that counsel for the City opposes the issuance of a TRO. That rule provides that when applying for ex parte relief "[i]t shall be the duty of the attorney ... to advise the Court in writing and under oath of efforts to contact other counsel and whether any other counsel, after such advice, opposes the application." Indeed, counsel for the City informed Plaintiffs' counsel in writing that she was required to include this information in her TRO filing, yet Plaintiffs blithely ignored the rule and filed their ex parte application without informing this Court of the City's position. Sparrow Decla. at ¶ 7. This refusal to comply with the rules should not be rewarded.

Third, it appears that Plaintiffs filed evidence under seal that was not disclosed to the City, and that this was done without receiving permission from this Court to do so. While Plaintiffs did not inform the City that anything was filed under seal, let alone the nature of the evidence they have attempted to place before the Court, the City was able to ascertain from the Court's docket that something was filed under seal on October 19, 2012. Because Plaintiffs did not serve even the cover sheet for their "under seal" filing, and did not bother to first seek an order governing the filing and service of confidential material, the City has not had the opportunity to evaluate and respond to Plaintiffs' evidence.[2]

If Plaintiffs had sought leave to proceed under pseudonyms before they filed

---

[2] However, as discussed in the City's opposition to the motion to proceed under pseudonyms, to the extent that the evidence offered includes personal information about any of the Plaintiffs, they cannot maintain anonymity. Either this is a facial challenge to the ordinance brought by convicted child molesters who understandably prefer to remain anonymous and file under pseudonyms, or this is an as-applied challenge brought by named individuals who put their own circumstances at issue. Plaintiffs cannot have it both ways. Moreover, if evidence is to be offered, the adversarial process requires the counsel for the City have access to it.

their original Complaint on September 28, there would likely be an order in place governing the procedures for filing under seal and service of confidential documents. None of this has occurred, however, and Plaintiffs' actions leave the City in the position of responding to an inappropriately noticed application for a TRO based upon secret evidence, brought by unnamed parties over whom the Court lacks jurisdiction.

For all of these reasons, the requested TRO should not issue.

## IV. **There Is No Urgency.**

The City Council approved the first reading of the challenged ordinance on August 20, 2012, and adopted it on September 10, 2012. Amended Complaint at ¶ 20. Plaintiffs then waited until September 28, 2012 to file their original Complaint. This still left ample time to file a regularly noticed and fully briefed motion for preliminary injunction or at the very least a motion on shortened time. Instead, Plaintiffs focused on attracting media attention and waited until October 19, 2012 to file an application for a TRO on just one business day's notice and without service on the counsel with whom they had been discussing the case for a week. To paraphrase a popular saying, Plaintiffs' delay is not this Court's emergency.

Convicted child molester John Doe # 6 claims that, if he must comply with the ordinance, "he and his family will suffer immediate and irreparable harm … including but not limited to physical harm, perhaps death, … as well as damage and / or destruction of their family home." (Memorandum of Points and Authorities in Support of Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction at 13:16-21).[3] However, the requirement to post a sign stating "no candy or treats at this residence" applies only to convicted child molesters whose photos, names and addresses already appear on the Megan's Law website. Any

---

[3] Presumably, these statements were made in a declaration submitted to the court, but not the defendant.

1  risk to convicted child molesters from the revelation of their names and addresses
2  already exists due to state and federal laws that have been repeated upheld by the
3  courts.
4       Moreover, sex offenders are not alone in refraining from Halloween activities.
5  Many homes are dark and undecorated on Halloween, and many post signs stating that
6  candy will not be handed out to avoid being bothered by trick-or-treaters. (Indeed,
7  such signs are available for download on the internet. See
8  http://www.halloweensign.com (as of October 21, 2012).)
9       It is, quite frankly, absurd to contend a vigilante seeking to attack a convicted
10 child molester would bypass information available on the Megan's Law website 365
11 days a year and instead walk through neighborhoods looking for unlit and undecorated
12 homes with a sign posted on the door on Halloween. This is especially so given that
13 many homes remain undecorated and unlit on Halloween, and many people post "no
14 candy" signs . The entirely subjective and irrational fear that the family of John Doe
15 #6 will be subjected to physical harm, perhaps death, and the destruction of their home
16 as a result of this ordinance is not the kind of emergency that justifies the issuance of a
17 federal court's TRO against enforcement of local legislation on a day's notice. Comity
18 between the branches and between federal and local officials require at least
19 adherence to procedural rules if not a weightier showing that this.
20      It is much more likely that as a result of the publicity that Plaintiffs have
21 generated in this case, their neighbors would see the "no candy or treats at this
22 residence" sign, check the Megan's Law website, and discover that John Doe #1, John
23 Doe #4, John Doe #6 and / or John Doe #10 are convicted child molesters. To the
24 extent that Plaintiffs receive this unwanted attention, however, it results from their
25 attorney's efforts to publicize this case. And to the extent there is a risk of ensuing
26 mischief on Halloween , Plaintiffs could have easily mitigated that risk by filing a
27 regularly noticed and fully briefed motion for a preliminary injunction. But they did
28 not.

## V. Plaintiffs Do Not Satisfy the Substantive Requirements for a TRO.

A TRO is an extraordinary remedy granted only when the need for immediate relief is clear. Plaintiffs must establish each of the following:

- That they are likely to succeed on the merits;
- That they are likely to suffer irreparable harm in the absence of preliminary relief;
- That the balance of equities tips in their favor; and
- That an injunction is in the public interest.

*Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008). As discussed below, these requirements are not met here.

### A. Plaintiffs Are Unlikely to Succeed on the Merits.

Plaintiffs argue that restrictions on Halloween displays amount to content-based prohibitions on speech, which are subject to strict scrutiny. As briefly discussed below, they are mistaken. (A full discussion of these issues is not possible given the limited notice, failure to disclose the supporting evidence, and complexity of the issues.) Moreover, even if these requirements **were** subject to strict scrutiny (which they are not), the ordinance is narrowly tailored to further the compelling interest of protecting children from sexual assault.

#### 1. Halloween Decoration and Outdoor Lighting Are not Protected Expression.

Plaintiffs' claim that Halloween lighting and décor constitute protected speech should be rejected. Decorating for Halloween and turning on lights amount to These are conduct, not speech. To show that conduct involves protected expression, a party must establish (1) an intent to convey a particularized message, and (2) a great likelihood that the message would be understood by those who viewed it. *Spence v. Washington*, 418 U.S. 405 (1974). In *Spence*, the plaintiff displayed a United States

flag during the Vietnam War bearing a peace sign in the blue field. The high Court concluded a reasonable observer would understand that the display expressed a view that the United States should not be at war. Here, outdoor lighting and displays involving jack-o-lanterns, witches, ghosts, bats, and the like do not convey any particular message that is likely to be understood by an observer, and the decorating and lighting restrictions at issue therefore donot amount to a restriction on speech to begin with, much less the kind of restriction on speech that is subject to strict scrutiny.

### 2. Restrictions on Halloween Decorations Are Not Content-Based

Plaintiffs assume that because the ordinance restricts a particular category of seasonal décor, it is content-based. As discussed above, however, restrictions on Halloween decoration do not amount to restrictions on expression in the first place. However, even assuming *arguendo* that these restrictions involve protected speech, they are not "content based" simply because they involve Halloween.

*U.S. v. O'Brien*, 391 U.S. 367 (1968) established the analytical framework that applies to content-neutral regulation of expressive conduct. Such regulation is upheld when it (1) furthers a substantial government interest unrelated to the suppression of free expression, and (2) is no greater than is essential to furtherance of the government interest. In *O'Brien*, a man who burned his draft card on the steps of the South Boston Courthouse during the Vietnam War was convicted of violating a statute that prohibited the mutilation or destruction of a draft card. He argued the statute was an unconstitutional restriction on symbolic speech. The Court evaluated whether the restriction was "content-based" by examining the government interest, which it characterized as administering the constitutional power of Congress to raise and support armies. *Id.* at 377–378. This interest was deemed content-neutral, and the Court concluded that the case was therefore "unlike one where the alleged government interest in regulating the conduct arises in some measure because the communication allegedly integral to the conduct is itself thought to be harmful." *Id.* at 382.

Here, the City has no interest in suppressing Halloween lighting and décor per se. Even if Halloween decoration and lighting amounted to expression (which they do not), the public interest in keeping children away from the homes of convicted child molesters is unrelated to suppression of free expression, and strict scrutiny does not apply. Instead, the restriction on Halloween lighting and décor should be upheld under *O'Brien*, because the government's interest is in protecting children, not suppressing speech. Halloween is the only day of the year when children seeking candy traditionally knock on the doors of strangers. The restriction does not prevent convicted child molesters from decorating at other times, from spending Halloween evening at home, or celebrating Halloween in some other fashion; instead, it merely requires them to take down enticing Halloween décor and lighting during the few hours when such décor might induce children to come knocking. As such, the restriction is no greater than is essential to the furtherance of a substantial (indeed, compelling) government interest.

### 3. Halloween Activities Do Not Involve Fundamental Rights or a Protected Right of Association.

Moreover, Halloween decorations and trick-or-treating do not involve fundamental rights, and the ordinance therefore does not implicate family autonomy or substantive due process. Fundamental rights are limited to issues involving the determination of family living arrangements, marriage, pregnancy, contraception, abortion, and the rearing and education of children. *See, Whisenhunt v. Spradlin*, 464 U.S. 965, 971 (1983) (Brennan, dissenting). Plaintiffs do not, and cannot, cite any case suggesting s a fundamental right to celebrate Halloween by decorating the front yard and handing out candy.

Similarly, no case supports the position that answering the door to trick-or-treaters on Halloween involves a protected right of association, and there are no "association rights" between convicted child molesters and unknown children who happen to knock on Halloween, as opposed to association involving core relationships

and selected individuals with a common purpose. In *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984), plaintiffs challenged a Minnesota Department of Human Rights order that a fraternal organization admit women. The high Court addressed the degree to which different types association may or may not be protected by the Constitution:

> Determining the limits of state authority over an individual's freedom to enter into a particular association ... unavoidably entails a careful assessment of where that relationship's objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments.

*Id.* at 620. The Court staked out the two poles of the continuum as follows: "the Constitution undoubtedly imposes constraints on the State's power to control the selection of one's spouse that would not apply to regulations affecting the choice of one's fellow employees." The Jaycees were found to be unentitled to Constitutional protection, because their association was neither small nor selective.

Here, opening the door and handing out candy to unknown costumed children facilitates "the most attenuated of personal attachments," at best, and no court has ever held that convicted child molesters have a protected right to associate with unrelated children. In fact, California Penal Code section 290.095 prohibits those convicted of sex crimes against children under the age of 16 from working with children at all.

### 4. The Requirement to Post a Sign Stating "No Candy or Treats at This Residence" Should Be Upheld.

The sign requirement applies only to convicted child molesters who are already visible to the public on the Megan's Law website and requires only that they post a sign stating "no candy or treats at this residence" sign on their doors for a few hours on Halloween. It communicates to children that, regardless of whether there are lights on inside the home or other indicators that candy might be had, they should look elsewhere. This does not violate child molesters' First Amendment rights because it communicates an accurate, viewpoint-neutral statement of fact.

Moreover, while Plaintiffs fear that passersby will read the message as "a

OPPOSITION TO EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

113357.3

convicted child molester lives here," many people who have not been convicted of a sex crime against children post "no candy" signs at Halloween. And in any event, Plaintiffs have no constitutional right to conceal their status as convicted child molesters. To the contrary, accepting the allegations of the Second Amended Complaint, Plaintiffs are required to register for publication of their photos, names and addresses on the Megan's Law website, and California Penal Code section 290.095 requires Plaintiffs to inform potential employers of their sex offender status when seeking a job that involves working with children. Like the sign posting requirement at issue here, section 290.095's requirement involves the communication of an accurate, viewpoint-neutral statement of fact that should not be subject to strict scrutiny.

Even assuming *arguendo* that a strict scrutiny test applies here (which is far from clear, given that the "no candy" statement involves uncontroverted fact rather than opinion, is intended to prevent misleading communications and is entirely viewpoint neutral), the test is not applied mechanically. Instead, the Court must evaluate the degree to which the ordinance burdens speech-related interests, the nature of the government interest in protecting children from sexual assault, and whether the ordinance burdens speech out of proportion to the benefits the ordinance seeks. In the current circumstances, some convicted child molesters living in Simi Valley are listed on the Megan's Law website as living in apartments, where there is no individual front yard to decorate and likely no outdoor light to signal which apartments welcome trick-or-treaters. For these convicted child molesters, a "no candy" sign is the only practical and effective way to discourage trick-or-treaters. *See Burson v. Freeman*, 504 U.S. 191, 210 (1992) (plurality opinion) [applying strict scrutiny and finding relevant the lack of a "significant impingement" on speech]. Simply put, requiring display for a few hours of a factual and viewpoint-neutral "no candy" statement does not significantly burden speech and such burden as there is is not out of proportion to the benefit of protecting children from knocking on the door of a convicted child

molester.

In sum, the ordinance's requirements are valid, and Plaintiffs are therefore unlikely to prevail on the merits once these issues are fully briefed on a regularly noticed dispositive motion. Under these circumstances, a TRO should not issue.

### B. Plaintiffs Are Not Likely to Suffer Irreparable Harm in the Absence of a TRO.

Plaintiffs have no right to keep their sex offender status secret, however, because Megan's Law (like similar laws that exist in every state) has been upheld. As discussed above, however, vigilantes need not walk through neighborhoods looking for a sign on the door of an unlit home in a narrow window of time on Halloween to determine where sex offenders reside, because that information is easily viewed on the Megan's Law website 24 / 7, 365 days a year. The ordinance therefore does not impose any additional threat of harm beyond the existing possibility of harm resulting from exposure on the Megan's Law website, which the courts have repeatedly upheld as within the power of the State and not a violation of the rights of sex offenders. Whatever their fears, Plaintiffs identify no new harm that would result from enforcement of the ordinance.[4]

### C. The Balance of Equities Favors Enforcement of the Ordinance.

An injunction is an equitable remedy, and therefore "a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. Although particular regard should be given to the public interest ... a federal judge ... is not mechanically obligated to grant an

---

[4] Plaintiffs' fears that the ordinance might be enforced arbitrarily (e.g., Plaintiffs' Memorandum of Points and Authorities at p. 3) do not amount to a legal challenge to the ordinance and are premature at best. Such concerns are best raised in an as-applied challenge and not via a facial attack that seeks to restrain enforcement of the ordinance in any manner at all.

1 injunction for every violation of law." *Amoco Production Co. v. Village of Gambell,*
2 *Alaska*, 480 U.S. 531 (1987). Here, the "irreparable harm" asserted involves
3 speculation that John Doe #6 might be targeted by vigilantes looking for a "no candy"
4 sign on his door for a few hours on Halloween even though, if he has standing to
5 make this claim, his photo, name and address are available on the Megan's Law
6 website all the time. In contrast, the purpose of the contested ordinance is to protect
7 children from convicted sex offenders who harmed children in the past and who have
8 a higher risk of recidivism than non-sex offenders, which is a compelling interest.

Moreover, numerous other opportunities remain for Plaintiffs to celebrate Halloween. They can attend parties, visit at a friend's house or go door-to-door themselves. Indeed, the ordinance imposes no restrictions on their ability to stand on the sidewalk, at the foot of the driveway, or in other public places and hand out candy. Those interactions, however, are in public view. What they are prohibited from doing is greeting unwary children in the privacy of their homes. 'The balance of equities therefore favors protecting children.

### D.     **Enforcement of the Ordinance Is in the Public Interest.**

While the City does not dispute the public interest in protecting Constitutional rights, celebration of Halloween is not a fundamental right. As discussed above, fundamental Constitutional rights are limited to issues involving family living arrangements, marriage, pregnancy, contraception, and the rearing and education of children. Decorating one's yard and opening the door to trick-or-treaters on Halloween are not such fundamental rights, and nothing in the ordinance infringes upon Plaintiffs' protected rights of association or expression. In contrast, there is clearly a public interest in enforcing duly enacted legislation intended to protect children from sexual assault and to protect those convicted of sex crimes against children from temptation or accusations that can arise from unsupervised access to vulnerable children out of public view.

There is also a public interest in making sure that convicted child molesters who

are subject to the ordinance understand its requirements. To support this interest and to verify that Megan's Law registrants are in compliance with applicable registration requirements, the Simi Valley Police Department conducted a door-to-door compliance check, visiting all Megan's Law registrants in the City on the morning of Saturday, October 20 (and planned well before this application was filed), and provided written materials explaining the Halloween restrictions. McGinty Decla. at 2. The Simi Valley Police Department will follow up with those who were not home that morning and who therefore did not receive the informational materials, and this well-planned effort is expected to be completed before Halloween. McGinty Decla. at 5. Moreover, due to the publicity received by this ordinance, parents who would otherwise have checked Megan's List before sending their children out trick-or-treating may well now be relying on the protections of the ordinance, including the posting of a "no candy" sign.

Any last-minute change in the requirements to be enforced on October 31 will confuse sex offenders, parents and the general public and undermine the efforts of law enforcement to inform the community of the law's requirements. It is therefore in the public interest to avoid such confusion and to enforce the ordinance, rather than impose last-minute changes that could have been evaluated prior to the police informational campaign had Plaintiffs acted without the delay and procedural irregularities outlined above.

## VI. Conclusion

Plaintiffs' waiting time in which they could have filed a regularly noticed and fully briefed motion for a preliminary injunction (or even a motion on slightly shortened time) before seeking a TRO with one business day's notice (to the wrong counsel) in a matter in which the Court lacks jurisdiction can only be described as audacious. That audacity creates a procedural morass that must defeat their application for a TRO. Moreover, even were this application timely and properly

presented, the substantive requirements for issuance a TRO are not shown. For reasons of process and substance, this Court should deny Plaintiffs' request and allow the City to enforce its duly enacted ordinance.

DATED: October 22, 2012

COLANTUONO & LEVIN, PC
Michael G. Colantuono
Sandra J. Levin
Amy C. Sparrow

_____
Michael G. Colantuono
Attorneys for City of Simi Valley

Colantuono & Levin, PC
300 S. GRAND AVENUE, SUITE 2700
LOS ANGELES, CA 90071-3137

17    Case No. CV12-08377 PA (VBKx)
OPPOSITION TO EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER
TO SHOW CAUSE RE PRELIMINARY INJUNCTION
113357.3