UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| Case No. | CV 12-8377 PA (VBKx) | Date | October 29, 2012 |
|---|---|---|---|
| Title | John Doe # 1, et al. v. City of Simi Valley | | |

Present: The Honorable PERCY ANDERSON, UNITED STATES DISTRICT JUDGE

| Paul Songco | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

None  None

**Proceedings:**  IN CHAMBERS - ORDER

Before the Court is an *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction (the "Application"), filed by ten plaintiffs proceeding under pseudonyms (collectively, "Plaintiffs"). [Docket No. 15.] Defendant City of Simi Valley (the "City") has filed an Opposition.

I.  **Background**

On September 10, 2012, in light of "[s]tatistical information indicat[ing] that the supervised release of sex offenders has only been marginally effective from keeping them from committing another sex offense" and amid concerns that trick-or-treating on Halloween offers unique opportunities for sex offenders to victimize children, the Simi Valley City Council enacted Ordinance No. 1201 (the "Halloween Ordinance" or "Ordinance"). See Ordinance No. 1201, Simi Valley Municipal Code ("S.M.V.C.") § 5-43.01 – 5-45.04. The Halloween Ordinance aims to "protect children from the dangers posed by registered sex offenders convicted of offenses against minors" by imposing lifetime restrictions on Simi Valley registered sex offenders (October 31st of each year). Id. § 5-43.01.

The Halloween Ordinance regulates the conduct of "Sex Offenders,"[1] who are defined in the ordinance as "any person for whom registration is required pursuant to Section 290 of the California Penal Code, regardless of whether that person is on parole or probation, and has been convicted of an offense against a child." Id. § 5-43.02(b). The Ordinance defines "child or children" as "any person(s) under the age of eighteen (18) years of age." Id. § 5-43.02(a).

The Halloween Ordinance imposes four separate restrictions on the conduct of sex offenders on Halloween. The Ordinance provides:

---

[1] Unless otherwise noted, the term "sex offender" as used in this Order shall comport with the definition assigned that term by the Halloween Ordinance.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 12-8377 PA (VBKx) | Date | October 29, 2012 |
| Title | John Doe # 1, et al. v. City of Simi Valley | | |

Any sex offender, as defined herein, shall be required, between 12:00 a.m. and 11:59 p.m., on October 31 of each year to do the following:

  (a)  Post a sign, no smaller than twelve (12) inches by twenty-four (24) inches, with a font size no smaller than 72 points, on the front door at his or her residence stating, "No candy or treats at this residence." This requirement shall only apply to sex offenders who: i) are visible on the Megan's Law website, as maintained by the State of California Department of Justice, Office of the Attorney General; and ii) have been criminally prosecuted and convicted of a sex crime(s) upon a child, as defined herein.

  (b)  Leave all exterior residential, decorative, and ornamental lighting off during the evening hours starting at 5:00 p.m. until midnight, the next day;

  (c)  Refrain from decorating his or her front yard and exterior of the residence with Halloween decorations;

  (d)  Refrain from answering the door to children who are trick or treating.

Id. § 5.43-03. A violation of any of these provisions constitutes a misdemeanor. Id. § 5.43-04.

The Halloween Ordinance went into effect on October 11, 2012. On October 18, 2012, the City of Simi Valley Office of the Chief of Police adopted the Registered Sex Offender Halloween Restrictions Enforcement Policy to clarify the provisions of the Halloween Ordinance and guide its enforcement. (See Declaration of Cpt. John McGinty in Support of Opposition to Application for TRO, Ex. A ("Enforcement Policy").) The Enforcement Policy is being distributed to Simi Valley registered sex offenders. The interpretations provided by the Enforcement Policy will, to the extent necessary, be discussed in the Court's analysis.

  **B.  Factual & Procedural Background**

Plaintiffs are a group of Simi Valley registered sex offenders and their spouses and children who are subject or potentially subject to the Halloween Ordinance. Plaintiffs desire to hand out candy to trick-or-treaters and decorate the exterior of their residences with lights and Halloween decorations. On September 28, 2012, Plaintiffs filed suit in this Court alleging a single cause of action under 42 U.S.C. §

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-8377 PA (VBKx) | Date | October 29, 2012 |
|---|---|---|---|
| Title | John Doe # 1, et al. v. City of Simi Valley | | |

1983. Plaintiffs then filed a Verified Amended Complaint on October 12, 2012.[2/] Through this action, Plaintiffs seek a declaration that the Halloween Ordinance is facially unconstitutional in violation of the First Amendment, as applied to the States through the Fourteenth Amendment.

Plaintiffs filed the Application on October 19, 2012.[3/] Having considered the parties' submissions, and for the reasons that follow, the Court grants in part and denies in part Plaintiffs' Application.

**II.     Preliminary Considerations**

   **A.     Jurisdiction**

The City argues that the Court lacks jurisdiction over this action because Plaintiffs "filed their original Complaint . . . under John Doe and Jane Doe pseudonyms, without first seeking leave to do so." (Opp'n at 2.) The City relies on a Tenth Circuit case, W.N.J. v. Yocom, 257 F.3d 1171 (10th Cir. 2001), to support its argument.

As explained by the Tenth Circuit, Federal Rule of Civil Procedure 17(a)

> mandates that 'every action shall be prosecuted in the name of the real party in interest.' . . . When a party wishes to file a case anonymously or under a pseudonym, it must first petition the district court for permission to do so. If a court grants permission, it is often with the requirement that the real names of the plaintiffs be disclosed to the defense and the court but kept under seal thereafter. Where no permission is granted, the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them.

Id. at 1172.

Notwithstanding the Tenth Circuit's decision in Yocom, "district courts within the Ninth Circuit have concluded that dismissal for lack of jurisdiction is not warranted when the plaintiff files a motion to proceed under a pseudonym, even if that motion is filed after the defendant filed a motion to dismiss." Doe v. Network Solutions, LLC, 2008 U.S. Dist. LEXIS 7397, at *9 (N.D. Cal. Jan. 22, 2008) (emphasis added) (citing Roe v. Providence Health System, Inc., 2007 U.S. Dist. LEXIS 50655 (D. Or. Apr. 24, 2007); Roe v. City of San Diego, 2001 U.S. Dist. LEXIS 26137, at *10-12 (S.D. Cal. Dec. 21, 2001)).

---

[2/]     Plaintiffs' verifications were filed under seal.

[3/]     Also on October 19, Plaintiffs filed a Motion for Leave to Proceed Under Pseudonym. [Docket No. 21.] That Motion is not presently before the Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-8377 PA (VBKx) | Date | October 29, 2012 |
|---|---|---|---|
| Title | John Doe # 1, et al. v. City of Simi Valley | | |

Such a rule makes sense, as "[t]he initial complaint is a matter of public record, and once a plaintiff has opened a file number in federal court using his or her real name, any attempt to proceed under a pseudonym would be pointless." City of San Diego, 2001 U.S. Dist. LEXIS 26137, at *11.

Plaintiffs have filed a Motion for Leave to Proceed Under Pseudonyms. [Docket No. 21.] That Motion was filed the same day as Plaintiffs' Application. In light of that Motion, and considering the obvious reasons Plaintiffs have chosen to file under pseudonyms, the Court declines to deny Plaintiffs' Application for lack of jurisdiction.

**B.**      *Ex Parte* **Application Requirements**

Plaintiffs' request for a temporary restraining order is filed as an *ex parte* application. To justify *ex parte* relief, "the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures." See Mission Power Eng'g Co. v. Continental Cas. Co., 883 F. Supp. 488, 492 (C.D. Cal. 1995). Moreover, the moving party must be "without fault" in creating the need for *ex parte* relief or establish that the "crisis [necessitating the *ex parte* application] occurred as a result of excusable neglect." K. Clark v. Time Warner Cable, 2007 U.S. Dist. LEXIS 100716, at *2 (C.D. Cal. May 3, 2007) (citing Mission Power Eng'g Co., 883 F. Supp. at 492).

With Halloween fast approaching, Plaintiffs will be unable to challenge the constitutionality of the Halloween Ordinance without expedited review of their claims. Thus, *ex parte* relief is appropriate. The City argues, however, that Plaintiffs unjustifiably delayed in filing their Complaint and Application, and that relief should be denied on that basis. The City points out that the "first reading" of the Halloween Ordinance took place in August. Based on this notice of the impending passage of the Ordinance, the City argues, Plaintiffs' filing of the Application in October was unreasonably late and subjected the City to prejudice.

The Complaint was filed just over two weeks after the passage of the Ordinance and before it went into effect. In light of the City Council's recent passage of the Ordinance and the sensitive interests at stake on both sides of this litigation, the Court does not believe that Plaintiffs are at fault in creating the need for emergency relief.

The City also faults Plaintiffs for failing to follow precisely the notice requirements of Local Rule 7-19(b), which provides that "[i]t is the duty of the attorney [] applying [for *ex parte* relief] . . . to advise the Court in writing and under oath of the efforts to contact other counsel and whether any other counsel, after such advice, opposes the application." Plaintiffs' Application did not provide that information. However, Plaintiff provided actual notice to the City of the impending Application (Opp'n at 3), and the City had sufficient time to respond adequately to it. Thus, the Court declines to strike the Application for failure to abide by the letter of Local Rule 7-19(b).

Accordingly, the Court proceeds to the merits of Plaintiffs' Application.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-8377 PA (VBKx) | Date | October 29, 2012 |
|---|---|---|---|
| Title | John Doe # 1, et al. v. City of Simi Valley | | |

### III. Legal Standard: Temporary Restraining Order

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. See Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). The Ninth Circuit employs a "sliding scale" approach to preliminary injunctions as part of this four-element test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). Under this "sliding scale," a preliminary injunction may issue "when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," as long as the other two Winter factors have also been met. Id. (internal citations omitted). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S. Ct. 1865, 1867, 138 L. Ed. 2d 162 (1997).

Plaintiffs seek a temporary restraining order enjoining the City from enforcing the entirety of the Halloween Ordinance effective October 31, 2012. For the reasons that follow, the Court temporarily enjoins only § 5.43-03(a) of the Ordinance (the sign posting requirement).

### IV. Analysis

#### A. Likelihood of Success on the Merits

Plaintiffs argue that "[t]he Ordinance prohibits, regulates and mandates speech and regulates association speech and other expressive activity on private property by imposing four burdens on the speech and association rights of [sex offenders]. By virtue of the Ordinance's broad prohibitions relating to the entire residence of any [sex offender], all who reside with [sex offenders] are burdened by the Ordinance." (Application at 6.)

The Court addresses the provisions of the Halloween Ordinance in reverse order.

##### 1. Simi Valley Municipal Code § 5.43-03(d): Ban on Receiving "Trick-or-Treaters"

Section 5.43-03(d) provides that "any sex offender . . . shall be required, between 12:00 a.m. and 11:59 p.m., on October 31 of each year to . . . [r]efrain from answering the door to children who are trick or treating." Plaintiffs claim that this provision violates their First Amendment right of association.

To the extent that the spouses and children of sex offenders bring this claim, they have failed to demonstrate a likelihood of success on the merits. That is, the plain language of the Halloween

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| Case No. | CV 12-8377 PA (VBKx) | Date | October 29, 2012 |
|---|---|---|---|
| Title | John Doe # 1, et al. v. City of Simi Valley | | |

Ordinance and the Enforcement Policy's interpretive guidelines make clear that it is only a "sex offender," and not his or her spouse or children, who is prohibited from answering the door to "trick or treaters." The Enforcement Policy, for example, explains that

> Section 5.43-03 section (d) prohibits *a sex offender within the scope of the ordinance* from answering the door when persons who appear to be under the age of 18 approach the sex offender's residence on October 31 for 'trick or treating' activities. Children are deemed to be 'trick or treating' on October 31 if they are dressed in costumes. This provision does not prohibit sex offenders from answering the door to adults, or to members of their own immediate family.

Enforcement Policy § 4(e) (emphasis added).

Three additional considerations bolster the Court's conclusion that the prohibition on opening the door to "trick-or-treaters" applies only to sex offenders as defined by the statute. First, the explicit recognition by the Enforcement Policy of the impact that the Ordinance might have on a sex offender's "own immediate family" by acknowledging that such persons are not barred from opening the door to "trick or treaters." Second, the Enforcement Policy confirms that the term "sex offender" as used in the Halloween Ordinance is a term of art that "*narrows* the definition of 'sex offender'" rather than expands its scope or reach. Enforcement Policy § 2. Finally, the City's Opposition never argues that this provision extends to persons who do not fall within that narrow definition.

Thus, this provision of the Halloween Ordinance plainly does not regulate the conduct of any persons who do not fall within its narrowly defined group of "sex offenders." Accordingly, those plaintiffs who are the spouses and children have failed to demonstrate a likelihood of success or that serious questions are raised on their claim that their constitutional rights are infringed by this provision.

Whether this provision infringes the constitutional rights of sex offenders is another matter. Plaintiffs baldly assert that this provision implicates their rights to freely associate. (Application at 12-13.) However, Plaintiffs neither explain the basis for their assertion that having underage "trick-or-treaters" visit their homes on Halloween is a constitutionally protected associational activity, nor do they cite any authority for this proposition. (Id.) The existence of such a right is far from clear, moreover, as the freedom of association protects the rights (1) "to enter into and maintain certain intimate human relationships" such as marriage and familial cohabitation, and (2) "to associate for the purpose of engaging in those activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion." Roberts v. United States Jaycees, 468 U.S. 609, 617-18, 82 L. Ed. 2d 462, 104 S. Ct. 3244 (1984). Receiving "trick-or-treaters" – that is, opening the door to costumed children to provide them with pieces of candy – does not readily fall within either of these categories. Accordingly, Plaintiffs have failed to meet their burden to demonstrate even a serious question going to the merits (let alone a likelihood of success on the merits) of their claim that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-8377 PA (VBKx) | Date | October 29, 2012 |
| Title | John Doe # 1, et al. v. City of Simi Valley | | |

Halloween Ordinance's ban on answering the door to underage "trick-or-treaters" is facially unconstitutional.

    2.    **Simi Valley Municipal Code §§ 5.43-03(b)-(c): Restrictions on Halloween Decorations & Exterior Lighting**

           a.    **Exterior Lighting & Halloween Decorations as Expressive Conduct**

Sections 5.43-03(b) and (c) of the Simi Valley Municipal Code impose restrictions on the decoration and presentation of the exterior of a sex offender's residence. A sex offender is required to "[l]eave all exterior residential, decorative, and ornamental lighting off during the evening hours starting at 5:00 p.m. until midnight, the next day," § 5.43-03(b), and to "[r]efrain from decorating his or her front yard and exterior of the residence with Halloween decorations," § 5.43-03(c). As defined by the Enforcement Policy, "the duty . . . to extinguish exterior lighting and to refrain from decorating the exterior of his or her residence applies only to such exterior lighting and exterior areas that are visible from sidewalks or other places open to the public." Enforcement Policy § 4(c). "Halloween decorations," moreover, "include decorations . . . or symbols that a reasonable observer would perceive as relating to Halloween, including, but not limited to, Jack-o-lanterns or carved pumpkins, spider webs, ghosts, witches, skeletons, black cats, bats, monsters and tombstones." Id. § 4(d).

Plaintiffs argue that these provisions are facially unconstitutional as content-based prior restraints and compelled speech activities. As written, these provisions do not prohibit or compel verbal or written speech. As a threshold matter, then, Plaintiffs have failed to demonstrate that these provisions even implicate the First Amendment at all.

The First Amendment reads, in its entirety: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." In relation to expression, the First Amendment specifically addresses only speech. The United States Supreme Court has found, however, that conduct, when sufficiently imbued with clear elements of expression, also implicates the First Amendment's protections.

As the Supreme Court has summarized,

> The First Amendment literally forbids the abridgment only of "speech," but we have long recognized that its protection does not end at the spoken or written word. While we have rejected "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea," United States v. O'Brien, [391 U.S. 367, 376, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968)], we have acknowledged that conduct may be "sufficiently imbued with elements of communication to fall within the scope of the First and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-8377 PA (VBKx) | Date | October 29, 2012 |
| Title | John Doe # 1, et al. v. City of Simi Valley | | |

Fourteenth Amendments," [Spence v. Washington, 418 U.S. 405, 409, 41 L. Ed. 2d 842, 94 S. Ct. 2727 (1974)]. In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether "an intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." [Spence, 418 U.S. at 410-11.]

Texas v. Johnson, 491 U.S. 397, 404, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989). "The nature of [a plaintiff's] activity, combined with the factual context and environment in which it was undertaken" are relevant considerations in determining whether the communicative aspects of conduct amount to speech. O'Brien, 391 U.S. at 376.

Plaintiffs claim that these provisions "impose[] a government-mandated burden upon every [sex offender] to express the viewpoint that they do not wish to participate in Halloween." (Application at 13.) On the present record, however, it is not clear that the use or non-use of "exterior residential, decorative, and ornamental lighting" and the display or non-display of "Halloween decorations" constitutes expressive conduct. In support of their Application, Plaintiffs have submitted the declaration of John Doe #6. He explains: "My family and I regularly leave on exterior lighting at our home during the evening, in large part to declare our presence to would-be vandals or thieves[, and we] celebrate[] Halloween . . . by decorating the front yard and exterior and interior of our home [with Halloween decorations]." (Application, Declaration of John Doe #6, ¶¶ 9-10.) This declaration does not indicate that John Doe #6 intends to convey any particularized message by either the use of exterior lighting or the display of Halloween decorations. Cf. Muscko v. McClandless, 4 Am. Disabilities Cas. (BNA) 625 (E.D. Pa. 1995) (" In order to prove that his conduct was protected, plaintiff will have to establish that his exterior decorating was intended to express an idea . . . . This issue is better addressed in more factual detail at the summary judgment stage.").

Moreover, the same display of exterior lighting (ornamental or otherwise) and Halloween decorations can convey any of a number of "messages" ranging from the most general or abstract – for example, as a signal that someone is present in the residence, or simply a message akin to "Happy Holidays!" or "Happy Halloween!" – to relatively particularized – such as the display of Halloween decorations to signify that "trick-or-treating" at a particular residence is encouraged. The Court notes that Halloween itself encompasses a variety of beliefs and superstitions, both secular and non-secular, and that Halloween decorations are likewise varied; any message a person might intend to convey through such decorations is likely to be accordingly ambiguous and opaque. Thus, given the weakness of Plaintiffs' evidence and the multitude of messages, both generalized and particularized, that might be conveyed by the same lights or decorations, the Court is not convinced that, even within the context of Halloween night, "the likelihood [is] great that the [particularized] message [intended] would be understood by those who viewed it." Spence, 418 U.S. at 410-11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 12-8377 PA (VBKx) | Date | October 29, 2012 |
| Title | John Doe # 1, et al. v. City of Simi Valley | | |

At this stage of the proceedings, Plaintiffs bear a heavy burden of persuasion. Nonetheless, Plaintiffs present only conclusory argument and unpersuasive evidence in support of their claim that the Halloween Ordinance's prohibitions on the display of exterior lighting and Halloween decorations implicate conduct that falls within the ambit of the First Amendment. This is insufficient at this stage of the proceedings. On a more developed record, the Court may indeed agree with Plaintiffs that such activities constitute expressive conduct, but on the record, Plaintiffs have failed to raise even a serious question going to the merits of this claim, let alone a "clear showing" that they are likely to succeed on the merits.

### b. The Halloween Ordinance's Prohibitions on Exterior Lighting & Halloween Decorations Satisfy are Valid

Assuming *arguendo* that these provisions of the Halloween Ordinance do in fact impose restrictions on expressive conduct, these provisions nonetheless appear to pass constitutional muster.

"The government generally has a freer hand in restricting expressive conduct than it has in restricting the written or spoken word." Johnson, 491 U.S. at 406. Thus, a message "delivered by conduct that is intended to be communicative . . . may be forbidden or regulated if the conduct itself may constitutionally be regulated, if the regulation is narrowly drawn to further a substantial governmental interest, and if the interest is unrelated to the suppression of free speech." Clark v. Community for Creative Non-Violence, 468 U.S. 288, 294 (1984) (citations omitted). Notably, "narrowly drawn" here does not mean the "least restrictive or least intrusive means of" achieving a government's legitimate content-neutral interests. Ward v. Rock Against Racism, 491 U.S. 781, 798, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989). Rather, the regulation must "leave open ample alternative channels for communication of the information." Clark, 468 U.S. at 294.

As discussed in more detail below, the City's interests here are legitimate – indeed, they are compelling. Moreover, to the extent that the message conveyed by exterior lighting and Halloween decorations is that the residence and its occupants "wish to participate in Halloween" (Application at 13), these provisions leave open ample alternative channels for the communication of this message. As the City points out:

> [N]umerous other opportunities remain for Plaintiffs to celebrate Halloween. They can attend parties, visit at a friend's house or go ["trick-or-treating"] door-to-door themselves. Indeed, the ordinance imposes no restrictions on their ability to stand [in public view] on the sidewalk, at the foot of the driveway, or in other public places and hand out candy.

(Opp'n at 15.) These activities clearly suffice to communicate to the public Plaintiffs' festive Halloween spirit. Thus, the Court finds that even had Plaintiffs shown that these provisions regulate expressive conduct, Plaintiffs still cannot demonstrate even that serious questions going to the merits of this claim are present here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| Case No. | CV 12-8377 PA (VBKx) | Date | October 29, 2012 |
|---|---|---|---|
| Title | John Doe # 1, et al. v. City of Simi Valley | | |

### 3. Simi Valley Municipal Code § 5.43-03(a): Sign Posting Requirement

Finally, those sex offenders whose names also are "listed on the portion of the Megan's law website visible to the general public" are further required to "[p]ost a sign, no smaller than twelve (12) inches by twenty-four (24) inches, with a font size no smaller than 72 points, on the front door at his or her residence stating, "No candy or treats at this residence." Enforcement Policy, §3(2); S.M.V.C. § 5.43-03(a).

Plaintiffs contend that this provision of the Halloween Ordinance is unconstitutional as compelled speech that requires them to espouse – in written words directed to the general public – a viewpoint to which they do not adhere. (See Application at 12.)

It is well-established that a regulation compelling noncommercial speech is subject to strict scrutiny and must be narrowly tailored to serve a compelling governmental interest. United States v. Playboy Entm't Group, Inc., 529 U.S. 803, 813, 120 S. Ct. 1878, 146 L. Ed. 2d 865 (2000); Riley v. National Federation of Blind, Inc., 487 U.S. 781, 796, 108 S. Ct. 2667, 101 L. Ed. 2d 669 (1988). The First Amendment protects not only "the right to speak freely," but also "the right to refrain from speaking at all." Wooley v. Maynard, 430 U.S. 705, 714, 97 S. Ct. 1428, 51 L. Ed. 2d 752 (1977); see also Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston, 515 U.S. 557, 573, 115 S. Ct. 2338, 132 L. Ed. 2d 487 (1995) ("[O]ne important manifestation of the principle of free speech is that one who chooses to speak may also decide what not to say."). Because "[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech," laws that compel speech are normally considered "content-based regulation[s] of speech" and therefore are subject to strict scrutiny. Riley, 487 U.S. at 795.

The City nonetheless argues that because "the sign posting requirement . . . is an accurate, viewpoint neutral statement of fact[, it] should not be subject to strict scrutiny." (Opposition at 13.) Strict scrutiny applies, however, "even in cases where the compelled disclosure is limited to factually accurate or non-ideological statements." Greater Balt. Ctr. for Pregnancy Concerns v. Mayor & City Council, 683 F.3d 539, 552 (4th Cir. 2012); see also Riley, 487 U.S. at 797-98 (invalidating a requirement that professional fundraisers disclose to potential donors the percentage of charitable contributions collected during the previous 12 months that were actually turned over to the charity); Hurley, 515 U.S. at 573 (stating that the "general rule[] that the speaker has the right to tailor the speech[] applies not only to expressions of value, opinion, or endorsement, but equally to statements of fact").

The Halloween Ordinance does indeed compel sex offenders to speak, mandating that they post a sign that there is "no candy or treats at this residence." Thus, the Court applies strict scrutiny to that provision. Cf. Greater Balt. Ctr., 683 F.3d at 552 (applying strict scrutiny to ordinance requiring pregnancy center "to post a sign that it 'does not provide or make referral for abortion or birth-control services'"). This exacting standard is appropriate notwithstanding the substantial and delicate interests

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-8377 PA (VBKx) | Date | October 29, 2012 |
|---|---|---|---|
| Title | John Doe # 1, et al. v. City of Simi Valley | | |

served by laws regulating the conduct of sex offenders. See White v. Baker, 696 F. Supp. 2d 1289, 1311-12 (N.D. Ga. 2010) (applying strict scrutiny in First Amendment challenge to invalidate law authorizing the public release by law enforcement officials of identifying information about registered sex offenders).

Content-based speech regulations such as the Halloween Ordinance's sign requirement "are presumptively invalid." R.A.V. v. City of St. Paul, 505 U.S. 377, 382, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992). The City thus bears the burden of rebutting the presumption of invalidity. Playboy Entm't Group, 529 U.S. at 817. Indeed, "[i]t is rare that a regulation restricting [or compelling] speech because of its content will ever be permissible." Id. at 818. The City can, nonetheless, rebut the presumption if it is able to show that the ordinance is "narrowly tailored to promote a compelling Government interest," such that the ordinance is the "least restrictive alternative" to serve the government's purpose. Id. at 813; Ashcroft v. ACLU, 542 U.S. 656, 666, 124 S. Ct. 2783, 159 L. Ed. 2d 690 (2004).

The CIty has successfully demonstrated that a compelling governmental interest underlies the Halloween Ordinance. The Simi Valley City Council enacted the Halloween Ordinance in order to protect children from the dangers posed by sex offenders while "trick-or-treating," a night-time activity during which children of all ages frequently come into close and unsupervised contact with strangers. In particular, the City's statute aims at substantially decreasing the likelihood that children will be in vulnerable locations near the entry areas of the residences of sex offenders while "trick-or-treating."

It has been recognized that "[s]ex offenders are a serious threat in this Nation." McKune v. Lile, 536 U.S. 24, 32, 122 S. Ct. 2017, 153 L. Ed. 2d 47 (2002). Statistics show that when "convicted sex offenders reenter society they are much more likely than any other type of offender to be re-arrested for a new rape or sexual assault." Id. at 32-33. "[E]very . . . State, has responded to these facts by enacting a statute designed to protect its communities from sex offenders and to help apprehend repeat sex offenders." Connecticut Dept. of Public Safety v. Doe, 538 U.S. 1, 4, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003).

The City provides no documentary evidence that Halloween is a particularly dangerous time for children vis-à-vis sex offenders. It is common sense, however, that young "trick-or-treaters" are indeed vulnerable to child predators on Halloween. Thus, the Court agrees with the City that the interest underpinning the Halloween Ordinance is sufficiently compelling to satisfy the strict scrutiny standard.

Nonetheless, the Halloween Ordinance's sign requirement is not narrowly tailored to achieving that compelling interest. First, the Court notes that the sign is ambiguous and does not clarify the "danger" that the statute serves to mitigate. Moreover, and more importantly, a number of less speech-restrictive alternatives exist that serve substantially to further the aims of the statute. The three remaining substantive provisions of the Halloween Ordinance, for example, are powerful avenues by which "trick-or-treaters" will be dissuaded from venturing onto the properties of sex offenders. Moreover, all the sex offenders who would, under the Ordinance, be required to post a sign are already visible on California's Megan's Law website. Thus, in light of these less restrictive, effective

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-8377 PA (VBKx) | Date | October 29, 2012 |
|---|---|---|---|
| Title | John Doe # 1, et al. v. City of Simi Valley | | |

alternatives to the sign posting requirement, the Court finds that Plaintiffs are likely to prevail on the merits of their claim that the sign requirement is unconstitutional.

### B.  Likelihood of Irreparable Harm

It is undisputed that the that loss of "First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976); see also Assoc. General Contractors of Calif. v. Coalition for Econ. Equity, 950 F.2d 1401, 1412-13 (9th Cir. 1991) ("[A]n alleged constitutional infringement will often alone constitute irreparable harm."); New York Magazine v. Metro. Transp. Auth, 136 F.3d 123, 127 (2d Cir. 1998) (same). As discussed above, Plaintiffs have made a clear showing that they are likely to succeed on the merits of their claim that the sign requirement – a form of compelled speech – runs afoul of the free speech guarantee of the First Amendment. Thus, they are likely to suffer irreparable harm absent issuance of a temporary restraining order.

Furthermore, the sign requirement, heavily publicized in the Simi Valley area, poses a danger to sex offenders, their families and their property. Although the sign employs innocuous language, its function and effect is likely to approximate that of Hawthorne's Scarlet Letter – drawing immediate public attention to Plaintiffs and potentially subjecting them to the dangerous mischief common on Halloween night and to community harassment in the weeks and months following – and in that way the Ordinance's sign requirement is different in kind from the disclosure requirements of California's Megan's Law. These considerations further support the issuance of a temporary restraining order.

### C.  Balancing of the Equities & Public Interest Considerations

As noted, Plaintiffs are likely to suffer irreparable harm in the form of lost First Amendment freedoms. Moreover, the sign posting requirement potentially subjects Plaintiffs to harm to their persons, properties, and reputations. These are significant hardships that support the issuance of an injunction.

The City responds that enjoining enforcement of any part of the Halloween Ordinance – the sign posting requirement in particular – contravenes the public interest and imposes a hardship on the City that far outweighs that imposed on Plaintiffs. The Court is sensitive to the City's concerns. State and local governments should – and do – have substantial freedom to fashion laws regulating the post-release conduct of convicted sex offenders, particularly those whose sex crimes targeted children. The compelling governmental interest such laws serve, however, does not render them immune to constitutional scrutiny. In light of the effective alternatives to the sign posting requirement and the identifying information already publicly available on California's Megan's Law website, the Court does not believe that an injunction against the sign posting requirement will impose a substantial hardship on the City or the public. Accordingly, the balance of hardships tips in Plaintiffs' favor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-8377 PA (VBKx) | Date | October 29, 2012 |
|---|---|---|---|
| Title | John Doe # 1, et al. v. City of Simi Valley | | |

Finally, a limited temporary restraining order is in the public interest. Plaintiffs have made a strong showing that the sign posting requirement is facially unconstitutional and likely to pose a risk to sex offenders and their families and cohabitants. The public interest is not served – indeed, it is undermined – by enforcement of an unconstitutional law singling out a discrete, outcast group to speak in such a way that their persons, property, and loved ones may be endangered. Because the impact on the public of enjoining this section of the Halloween Ordinance is likely to be negligible, the Court finds that a temporary restraining order is in the public interest.

### Conclusion

Plaintiffs have failed to call into question the constitutionality of sections 5.43-03(b)–(d) of the Halloween Ordinance. Thus, the Court denies Plaintiffs' Application as it pertains to those provisions.

Plaintiffs have, however, made a clear showing that they are likely to succeed on the merits of their facial challenge to the sign posting requirement of the Halloween Ordinance and that they are likely to suffer irreparable harm absent a temporary restraining order. Moreover, the Court also finds that the balance of equities tips in Plaintiffs' favor and that the public interest will be served by a limited injunction. Thus, the Court finds that the issuance of a temporary restraining order is appropriate.

In light of the foregoing, the Court grants in part and denies in part Plaintiffs' *Ex Parte* Application for Temporary Restraining Order. The Court hereby temporarily enjoins the City from enforcing the sign posting requirement of the Halloween Ordinance, section 5.43-03(a) of the Simi Valley Municipal Code.[4/] This Minute Order shall constitute the temporary restraining order; no further Order shall issue at this time.

IT IS SO ORDERED.

**NOT FOR PUBLICATION**

---

[4/] Pursuant to Federal Rule of Civil Procedure 65(b)(2), the Court orders the temporary restraining order is effective for 14 days. Plaintiffs' request for an order to show cause why a preliminary injunction should not issue is denied without prejudice inasmuch as Halloween falls within that 14 day period. If this matter is not resolved or tried on the merits before the celebration of Halloween in 2013, Plaintiffs are free to renew their motion for a preliminary injunction.